IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

STEVEN ALLEN SMITH,

      Plaintiff,

v.                                           Case No. 3:16-cv-12736

WESTERN REGIONAL JAIL MEDICAL; and
CORRECTIONAL OFFICER STEVE ADKINS,

      Defendants.


PROPOSED FINDINGS AND RECOMMENDATIONS

On December 30, 2016, Plaintiff Steven Allen Smith ("Smith"), proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983. (ECF No. 2). Smith seeks prospective and monetary relief for injuries he received during an assault at the Western Regional Jail in Barboursville, West Virginia ("WRJ"). Currently before the court are the defendants' motion and amended motion to dismiss the complaint. (ECF Nos. 16, 18). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT, in part,** and **DENY, in part,** the defendants' motions.

1

# I.    Smith's Allegations

According to the complaint, on November 4, 2016, Smith was an inmate at the WRJ, housed in protective custody. (ECF No. 2). At around 9:00 a.m., Smith was released from his cell to shower and make a telephone call. As Smith began walking toward the shower, another inmate came out of a nearby cell and attacked Smith. The inmate pulled Smith back into his cell and began to hit and kick him, leaving Smith in a bloody pool. A correctional officer walked into the cell block shortly after the assault, observed that Smith was bleeding, and took him to the medical unit. (*Id.*). Smith's injuries from the assault included bruised ribs, other cuts and bruises, a black eye, a bloody nose, and a neck injury.

Smith alleges that prior to the attack, he used the WRJ's grievance procedure to inform Jail employees that other inmates were threatening him. (*Id.*).  Smith also notified a shift supervisor of the threats, specifically complaining about the inmate who ultimately attacked him. (ECF No. 5). Despite Smith's repeated concerns, the other inmate was able to "cap" his cell door to keep it from locking, which allowed the inmate to exit the cell and attack Smith. Smith claims that the correctional officer in the tower, defendant Steve Adkins ("Adkins"), must have known the inmate's door was capped, because an unlocked cell door "shows red" in the tower. (ECF Nos. 2, 5). Smith alleges that defendant Adkins regularly allows inmates to cap their doors and "hates people with charges like [Smith's]," implying that defendant Adkins intentionally facilitated the assault on Smith. (ECF No. 2).

For relief, Smith asks that the correctional officers at the WRJ be required to "do their jobs and protect" inmates on protective custody. (*Id.*). He also seeks monetary compensation in the amount of $75,000 for his injuries, pain, and suffering.

## II.    Defendants' Contentions

Defendants assert four grounds in support of their motions to dismiss. First, they contend that this court lacks jurisdiction over them because they are immune from suit under the Eleventh Amendment to the United States Constitution. Second, they claim that Smith failed to exhaust his administrative remedies and is therefore precluded from filing a federal lawsuit. Third, the defendants argue that they are entitled to qualified immunity from money damages, because Smith's complaint lacks sufficient facts to demonstrate a constitutional violation. Finally, the defendants assert that Smith's complaint fails to state a plausible cause of action, because it lacks allegations establishing that the defendants acted with deliberate indifference to Smith's safety.

## III.    Motion to Dismiss Standard

The defendants have filed their motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the dispute. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). In contrast, a motion to dismiss made under Rule 12(b)(6) tests the legal and factual sufficiency of a complaint. *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008); *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). Defendants' motions will be considered under the standards governing both rules.

### A. Rule 12(b)(1)

The defendants have moved for a dismissal under Rule 12(b)(1) on the ground of Eleventh Amendment immunity. "The Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule

12(b)(1) or 12(b)(6)." *Haley v. Virginia Dept. of Health*, Case No. 4:12-cv-0016, 2012 WL 5494306, at *2 n.2 (W.D. Va. Nov. 13, 2012) (citing *Andrews v. Daw,* 201 F.3d 521, 525, n.2 (4th Cir. 2000)). "The recent trend, however, appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1)." *Id.; See also Melerski v. Virginia Dept. of Behavioral Health and Development Servs.,* 4:15CV39, 2016 WL 154144, at *1, n. 4 (W.D. Va. Jan. 11, 2016); *and Johnson,* 2012 WL 5024039, at *4 (W.D.N.C. Oct. 17, 2012) (collecting cases).

A Rule 12(b)(1) motion can be presented in two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true. *Adams,* 697 F.2d at 1219. In that case, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside of the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams,* 697 F.2d at 1219). Second, the movant may contend, as the defendants do here, that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams,* 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* The burden of proving that the court has subject matter jurisdiction rests with the plaintiff. *Johnson v. North Carolina,* 905 F.Supp.2d 712, 719 (W.D.N.C. Oct. 17, 2012). The court should grant dismissal when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (quoting *Adams,* 697 F.2d at 1219).

### B. Rule 12(b)(6)

Rule 12(b)(6) permits the court to dismiss a complaint that fails to state a claim

upon which relief may be granted. A complaint fails to state a claim when, viewing the factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp,* 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). The Supreme Court explained the "plausibility" standard in *Ashcroft v. Iqbal*, stating:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 1955) (internal citations omitted). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679. Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–158 (2nd Cir. 2007)).

In ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus,* 551 U.S. 89 (2007). However, the court is not required to accept the legitimacy of legal conclusions. *Iqbal,* 556 U.S. at 678. To survive a motion to dismiss, a complaint must plead both a factual and legal basis for relief. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint).

Courts are required to liberally construe *pro se* complaints, such as the one filed in this action. *Erickson,* 551 U.S. at 94. However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). A Rule 12(b)(6) motion should be granted only '"where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.,* 707 F.3d 1114, 1122 (9th Cir.2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1102 (9th Cir.2008)).

## IV.    Discussion

Smith brings this action under 42 U.S.C. § 1983. Section § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." In order to state a viable claim under § 1983, a plaintiff must show that: (1) a ***person*** deprived him or her of a federally protected civil right, privilege, or immunity and (2) that the ***person*** did so under color of State law. *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999) (emphasis added). Using this legal framework and the standards of review set forth above, the undersigned will address each of the defendants' grounds for dismissal in turn.

### A.  Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to

any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the United States Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State, itself, and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will* 491 U.S. at 70); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

As a preliminary matter, the undersigned must determine whether the WRJ and Adkins are agencies, officials, or other arms of the State entitled to Eleventh Amendment immunity. With respect to the WRJ, the answer is plain, as the law is well settled that the Jail is an arm of the State of West Virginia. *See Hall v. Pszczolkowski*, No. 5:14CV150, 2015 WL 6742107, at *3 (N.D. W. Va. Nov. 4, 2015) (holding that "state detention facilities are 'arms of the state'") (citing *Preval v. Reno*, 203 F.3d 821 (Table), No. 99-6950, 2000 WL 20591, *1 (4th Cir. Jan. 13, 2000) (unpublished per curiam)); *see, also, Kinder v. PrimeCare Med., Inc.,* No. 3:13–31596, 2015 WL 1276748, at *2 (S.D.W. Va. Mar. 19, 2015) (dismissing the WRJ from § 1983 suit on Eleventh Amendment grounds); *Skaggs*

*v. W. Reg'l Jail,* No. 3:13–3293, 2014 WL 66645, at \*1, \*4 (S.D.W. Va. Jan. 8, 2014) (dismissing the WRJ from § 1983 suit and adopting finding that the WRJ is arm of the State for Eleventh Amendment purposes). Therefore, the undersigned **FINDS** that the WRJ is entitled to sovereign immunity from suit under the Eleventh Amendment.

As to Adkins, the analysis is more complicated. In *Kentucky v. Graham,* the United States Supreme Court addressed circumstances under which a State official was entitled to Eleventh Amendment sovereign immunity, finding that not all State officials qualified. *Id.,* 473 U.S. 159, 165-66 (1985) The Court made a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Id.*; *see also Hafer v. Melo,* 502 U.S. 21 (1991). The Court concluded that officials sued in their official capacity were entitled to sovereign immunity, while officials sued in their personal capacity were not. As the Court explained, the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, and the target of the claim is the entity's "policy or custom," not the individual official. *Hafer,* 502 U.S. at 25 (citing *Graham,* 473 U.S. at 166). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

The determination of whether a defendant has been named in his official or individual capacity is generally made by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.,* 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935 (1998). "[A] plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows,* 66 F.3d 56, 60 (4th Cir. 1995). However, "[w]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the

relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of the factors outlined in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 F. App'x 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

Smith does not specify whether he intends to sue Adkins in his individual or personal capacities. However, Smith does ***not*** contend that Adkins acted in accordance with a governmental policy or custom. Instead, he claims that Adkins had a pattern and practice of ignoring his responsibilities and allowing inmates to cap their doors. Although Smith asks for both prospective and monetary relief, he does not assert any authority on the part of Adkins to provide prospective relief. Smith personally blames Adkins for facilitating the assault, suggesting that he has sued Adkins in his personal capacity. Finally, Adkins asserts the defense of qualified immunity. Given the nature of Smith's claims against Adkins, and Adkins's reliance on qualified immunity as an affirmative defense, the undersigned **FINDS** that Smith sues Adkins in his personal capacity. As

such, Adkins is not an official of the State entitled to sovereign immunity under the Eleventh Amendment.

Having determined that only the WRJ is entitled to sovereign immunity, the undersigned must consider whether dismissal of the WRJ is precluded by an exception to immunity. Three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir.2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno*, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir.1988)) (markings omitted); *and Price v. W. Virginia Air Nat'l Guard, 130TH Airlift Wing*, No. 2:15-CV-11002, 2016 WL 3094010, at *2–3 (S.D.W. Va. June 1, 2016) (holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the State in federal court). Historically, the State of West Virginia has not waived its sovereign immunity in this type of suit, and there is no indication that the State would do so now. *See Kinder*, 2015 WL 1276748, at *7; *Skaggs*, 2014 WL 66645, at *5; *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *4 (S.D.W. Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at *4 (S.D.W. Va. June 27, 2013); *Meadows v. Huttonsville Corr. Ctr.*, 793 F. Supp. 684, 686 (N.D.W. Va. 1992). Therefore, the waiver exception does not apply here.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of

constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73). In *Will v. Mich. Dept. of State Police*, the Supreme Court concluded that Congress did not have the States in mind as potential defendants when it imposed liability on "persons" under § 1983. *Id.,* 491 U.S. 58, 65 (1989). Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government ... unmistakably clear in the language of the statute," the Supreme Court observed that had Congress intended to include States as "persons" for the purposes of § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that "interpreting the words '[e]very person' to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer*, 502 U.S. at 26 (quoting *Will*, 491 U.S. at 65). Thus, Congress has not abrogated Eleventh Amendment sovereign immunity in the context of a § 1983 action. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the

laws of the state, and who threaten and are about to commence proceedings'" to enforce

an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393,

399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being

sued must have "proximity to and responsibility for the challenged state action" before

the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective

relief, does not permit judgments against state officers declaring that they violated federal

law in the past, and has no application in suits against the States and their agencies, which

are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf &*

*Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Because the WRJ is not a state

officer, but rather a state entity or agency, the third exception to Eleventh Amendment

immunity is likewise inapplicable. *Lee-Thomas*, 666 F.3d at 249 (recognizing that a

lawsuit for prospective relief must name state official as defendant, not state agency);

*Chafin*, 2013 WL 3716673, at *5 (recognizing same); *see also Thomas v. Nakatani*, 309

F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a

person to enjoin future state action by suing a state official for prospective injunctive relief

rather than the state itself. Even so, the Supreme Court has emphasized the importance

of respecting this fiction").

Smith asks the court to improve protection and security at the WRJ for inmates in

protective custody and to make correctional officers "do their job and protect us." (ECF

No. 2 at 5). However, Smith does not identify any unconstitutional policy or act about to

be enforced by a jail official, nor does he name as a defendant an official responsible for

implementing or enforcing unconstitutional practices against inmates in protective

custody. Therefore, the third exception does not apply.

In summary, the WRJ is an arm of the State entitled to Eleventh Amendment

immunity from suit. No exceptions to Eleventh amendment immunity apply. Accordingly, the WRJ should be dismissed from this civil action, with prejudice. In contrast, Smith sues Adkins in his personal capacity for an alleged constitutional violation that resulted in Smith being injured. Therefore, this ground for dismissal is not meritorious when applied to Adkins.

In a related argument, the defendants contend that they should be dismissed because they are not "persons" under § 1983. In *Will,* the Supreme Court considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of Rev. Stat. § 1979, 42 U.S.C. § 1983." *Id.*, 491 U.S. at 60. Examining the language and purpose of the statute, the Court concluded that Congress never intended to subject States to liability for deprivations of civil liberties when such suits would have otherwise been barred by the States' sovereign immunity. *Id.* at 66. The holding in *Will* applied not only to lawsuits against the State, itself, but also to suits against "public entities and political subdivisions" that are an "arm or alter ego" of the State. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Moor v. Alameda County,* 411 U.S. 693, 717 (1973)). "In determining if a public entity is an alter ego of the state ... courts have generally looked to the standards announced in cases addressing whether governmental entities are entitled to Eleventh Amendment immunity as an arm of the state. *Id.* Therefore, the undersigned **FINDS** that the Jail, as an arm of the State, is not a "person" subject to suit under § 1983. *See Roach v. Burch,* 825 F. Supp. 116 (N.D.W. Va. 1993); *also*, *Will,* 491 U.S. at 60; *Cantley v. Western Regional Jail and Correctional Facility Authority,* 728 F. Supp. 2d 803 (S.D. W. Va. 2010) (finding that the West Virginia Regional Jail Authority and Correctional Facility is not a "person" for purposes of a claim for money damages under § 1983.); *Lewis v.*

*Western Reg'l Jail,* No. 3:11–cv–01016, 2012 WL 3670393, at *5 (S.D.W. Va. July 24, 2012) (recognizing that "the WRJ is not a person subject to suit under § 1983"), *report and recommendation adopted by* 2012 WL 3726874 (S.D.W. Va. Aug. 27, 2012); *and Dement v. Summers Cnty. Courthouse,* No. 5:13–cv–08899, 2015 WL 461560, at *3 (S.D.W. Va. Feb. 3, 2015) (finding that Southern Regional Jail was not subject to § 1983 suit).

The Supreme Court further held that a State's officials "acting in their official capacities" likewise were not "persons" under § 1983. *Will,* 491 U.S. at 71. The Court explained: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official; rather, it is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* (citations omitted). On the other hand, state officials sued in their personal capacity are not acting as arms of the State, but are individuals acting under color of State law. *Hafer,* 502 U.S. at 25. Given that Congress enacted § 1983 specifically "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it," a state official acting in his personal capacity is subject to suit under § 1983. *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961). Accordingly, the defendants' contention that Adkins is not a person under § 1983 is without merit.

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust administrative remedies prior to filing a complaint in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."); *see, also, Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." (citations and internal quotation marks omitted)). However, administrative exhaustion is "not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner." *Hart v. Roderick,* No. CV GLR-15-2054, 2016 WL 3940219, at *3 (D. Md. July 21, 2016) (citations omitted). Instead, exhaustion is an affirmative defense, and the defendant bears the burden of proving that a prisoner failed to exhaust administrative remedies. *Id.*

The United States Supreme Court recently reiterated the mandatory exhaustion requirement found in § 1997e, but pointed out that the statute contains one explicit exception; the inmate need not exhaust "unavailable" remedies. *Id. Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016). The Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* Second, an administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* Finally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 1860.

"[S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.*

Defendants contend that Smith did not exhaust his administrative remedies, because he failed to "file a grievance at all." (ECF No. 19 at 6). Contrary to that representation, Smith claims in his complaint that he did "present the facts relating to his complaint in the state prisoner grievance procedure." (ECF No. 2). Accordingly, there is a dispute between the parties regarding a material fact. At this early stage of the litigation, neither party has had an opportunity to develop and produce the relevant evidence. Based on the limited record before the Court, it would be premature to dismiss Smith's complaint for failure to exhaust administrative remedies. *See Custis*, 851 F.3d 358, 361– 62 (4th Cir. 2017) (discussing that it is a rare, exceptional instance where administrative exhaustion is apparent on the complaint's face and noting that the inmate's statement that he attempted to exhaust his administrative remedies "may equally imply that he attempted, but could not, exhaust his administrative remedies—and thus, that he exhausted all remedies that were available to him."); *White v. Van Duncan*, No. 1:10-cv-014, 2010 WL 2813492, at *2 (W.D.N.C. July 15, 2010) (finding that, based on the limited record and viewing the allegations in the light most favorable to the plaintiff, the plaintiff attempted to utilize the administrative grievance procedure and his grievances were ignored and it would be improper to dismiss the complaint for failure to exhaust, as the issue could be raised later in a motion for summary judgment). For that reason, the undersigned **FINDS** that the record currently does not support dismissal of the complaint on the basis of failure to exhaust administrative remedies. Therefore, this ground should be denied as premature.

**C. Qualified Immunity**

Government officials performing discretionary functions may be protected from monetary damages under the doctrine of qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity "is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions." *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). This doctrine protects law enforcement officers in the exercise of their official duties from the risk of personal liability for making "bad guesses in gray areas," ensuring that they are only responsible for "transgressing bright lines." *Marciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992). As the United States Supreme Court explained in *Pearson v. Callahan:*

> Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

*Id.,* 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004)). Because qualified immunity is "an immunity from suit rather than a mere defense to liability," it is "effectively lost if a case is erroneously permitted to go to trial." *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200 (2001).

In determining the applicability of qualified immunity, the court must consider two questions: (1) whether a constitutional or statutory right would have been violated on the facts alleged by plaintiff, and (2) whether the right asserted was clearly established at the time of the alleged violation. *Pearson,* 555 U.S. at 232. These questions may be answered in any order that "[would] best facilitate a fair and efficient disposition of each case." *Id.* at 242. If a court finds that a claimed constitutional right was not clearly established at the time of the alleged wrongdoing, the court may dispose of the case without engaging in the pointless exercise of determining whether the facts alleged actually establish a violation of that right. *Id.* Similarly, if a court determines that the facts alleged by the plaintiff do not support a reasonable inference that a constitutional right was violated, the analysis terminates, and the complaint is subject to dismissal for failure to state a claim.

"[A] defendant can raise the qualified-immunity defense at both the motion to dismiss and summary judgment stage." *Raub v. Bowen*, 960 F. Supp. 2d 602, 608 n.8 (E.D. Va. 2013) (citing *Tobey v. Jones,* 706 F.3d 379, 393–94 (4th Cir. 2013)). "So long as qualified immunity does not turn on *disputed facts,* 'whether the officer's actions were reasonable is a question of pure law.'" *Id.* (citing *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011) (*en banc* )). However, in many cases, "immunity is peculiarly well-suited for resolution at the summary judgment stage." *Id.* (citing *Willingham v. Crooke,* 412 F.3d 553, 558–59 (4th Cir. 2005)).

Defendants argue that they are entitled to qualified immunity because Smith failed to articulate facts sufficient to demonstrate that the defendants violated a clearly established constitutional right. According to Defendants, Smith does not allege that either defendant acted intentionally or maliciously to deprive Smith of a constitutional

protection. Therefore, Defendants urge the court to answer the first of the two qualified immunity questions in their favor.[1]

In the complaint, (ECF Nos. 2, 5), Smith alleges that Defendant Adkins allowed an inmate to cap his door to prevent it from locking. The inmate then exited his cell and attacked Smith. Smith states that Adkins, who was working the tower that day, would have known that the inmate's cell was capped, because the cell would have shown up as unlocked on Adkins's monitor. Smith further asserts that the Jail staff was aware of threats made by the inmate to Smith, and that he had placed a "Keep Away" on the inmate to prevent any future contact with him. Smith claims that he has seen many inmates cap their cell doors when Adkins is in the tower, because Adkins does not care about the protection of the inmates. Finally, Smith alleges that Adkins hates people with charges like those lodged against Smith and suggests that Adkins intentionally facilitated Smith's beating by the other inmate. (*Id.*).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects inmates, like Smith, from punishment when they are being held in pretrial detention. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). "[B]ecause '[p]retrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment,'" *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001), courts generally apply the standards used in Eighth Amendment claims to due process claims brought by pretrial detainees. *Lacy v. DeLong*, No. 2:13-CV-14813, 2016 WL 3566242, at

---

[1] Given that the WRJ has sovereign immunity under the Eleventh Amendment, the issue of qualified immunity applies only to Defendant Adkins.

*4–6 (S.D.W. Va. June 27, 2016), *appeal dismissed,* 670 F. App'x 783 (4th Cir. 2016) (additional citations omitted). Under the Eighth Amendment, inmates have a right to be protected by prison officials from "violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.") A prison official violates an inmate's Eighth Amendment right to protection when the official knows of, but disregards, "an excessive risk to inmate ... safety." *Id.* at 837.

To establish an Eighth Amendment claim against Adkins, Smith must demonstrate both (1) "a deprivation suffered or injury inflicted" that was "sufficiently serious," when measured by an objective standard (objective component), and (2) that the responsible prison officials had a "sufficiently culpable state of mind" (subjective component). *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (*quoting Wilson,* 501 at 298-300). The objective component of an Eighth Amendment claim is satisfied by a showing that the challenged conditions caused or constituted an extreme deprivation of a basic human need. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (*quoting De'Lonta*, 330 F.3d at 634); *see also Stickler,* 989 F.2d at 1380 ("[F]or prison conditions to rise to the level of unconstitutional punishment, there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition."). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the

seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question." *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir. 1995) (citing *Strickler,* 989 F.2d 1375, 1379–80 (4th Cir. 1993)).

To meet the subjective component, Smith must establish that Adkins was deliberately indifferent to his health or safety. *Farmer*, 511 U.S. at 834 *quoting Wilson,* 501 U.S. at 297). The Supreme Court of the United States has explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Deliberate indifference is more than mere negligence but less than malice. *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976). If Adkins was aware of an excessive risk of harm to Smith's safety and disregarded it, he had a sufficiently culpable state of mind. *See Wilson*, 501 U.S. at 303; *Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010). An official's state of mind is a factual question, which can be proven by direct or circumstantial evidence. *Farmer*, 511 U.S. 825, 842. "For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.'" *Id.* at 842-43.

Applying these concepts to the instant case, the undersigned **FINDS** that Smith has alleged sufficient facts to demonstrate that Adkins knowingly disregarded a

substantial risk of serious harm to Smith that resulted in his assault and secondary injuries. Smith claims that prison officials were aware of specific threats against him, which prompted his placement in protective custody. Adkins was assigned to the tower on the day of the assault and knew that Smith was in protective custody. Adkins perhaps knew that Smith had a "Keep Away" placed on the inmate that assaulted him. Smith indicates that Adkins was known to disregard capped cell doors, despite the potential dangers associated with that practice. Smith alleges that Adkins had to know that the cell door of the inmate who assaulted Smith was not locked, yet Adkins still released Smith to take a shower and make a telephone call. Smith explicitly states that Adkins hated inmates facing charges similar to those lodged against Smith, and Adkins "allowed" the other inmate to have access to Smith; thereby, facilitating the assault.

Accepting these factual allegations as true and in the light most favorable to Smith, they adequately state a constitutional violation by Adkins. Adkins does not argue that Smith's right to protection under the Eighth Amendment was not clearly established at the time of the assault. Accordingly, Adkins's motion to dismiss on the ground of qualified immunity should be denied as premature.

### D. Failure to State a Claim

As their final ground for dismissal, Defendants argue that Smith's complaint fails to state a claim under § 1983. In support of the motion, Defendants contend that Smith's complaint lacks factual allegations demonstrating that Adkins had actual knowledge that Smith would be exposed to an attack, yet placed him in harm's way nonetheless. For the reasons explained in the prior section, the undersigned **FINDS** that Smith has alleged sufficient facts in the complaint to survive a Rule 12(b)(6) motion. Smith claims that Adkins knew the other inmate's door was capped, allowing him free rein to exit the cell at

will; that Adkins had a history of allowing inmates to cap their cells; that Adkins released Smith for hygiene despite knowing that the other inmate could easily exit his cell and attack Smith; that Adkins knew that Smith was in protective custody because other inmates had threatened him; that Adkins likely knew that Smith had a "Keep Away" placed on the other inmate because of their prior run-ins; and that Adkins hated Smith because of the charges against him. Smith's factual allegations, when taken as true and seen in the light most beneficial to Smith, raise a right to relief above the speculative level. Therefore, Smith states a plausible claim under § 1983 and is entitled to further discovery.

## V.     **Proposal and Recommendations**

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the United States District Judge accept and adopt the findings herein and respectfully **RECOMMENDS** that the Motion and Amended Motion to Dismiss of the defendants, (ECF Nos. 16, 18) be **GRANTED, in part,** and **DENIED, in part.** Specifically, the undersigned **RECOMMENDS** as follows:

1.     That the motions be **GRANTED** in favor of the Western Regional Jail;

2.     That the Western Regional Jail be **DISMISSED**, with prejudice, and removed from the style of the case;

3.     That the motions be **DENIED** with respect to defendant Adkins; and

4.     That the remaining parties be permitted to conduct further discovery on the claims against Adkins.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure. The

parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, counsel of record, and any unrepresented party.

**FILED:** August 22, 2017

Cheryl A. Eifert
United States Magistrate Judge