IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

STEVEN ALLEN SMITH,

       **Plaintiff,**

v.                                                                    Case NO. 3:16-cv-12736

CORRECTIONAL OFFICER STEVE ADKINS,

       **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Plaintiff's amended complaint and Defendant's motion for summary judgment. (ECF Nos. 5, 42).[1] This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned **RECOMMENDS** that the amended complaint be **DISMISSED**, without prejudice, due to Plaintiff's failure to exhaust his administrative remedies.

**I.     Introduction**

Plaintiff is a West Virginia Division of Corrections ("WVDOC") inmate incarcerated in the Western Regional Jail ("WRJ") within this judicial district. *See* Inmate Search, West Virginia Regional Jail and Correctional Facility website, available

---

[1] The motion for summary judgment is incorrectly styled as a motion to dismiss, but the certificate of service and memorandum in support establish that Defendant moves for summary judgment on Plaintiff's amended complaint. (ECF Nos. 42 at 3, 43).

1

at https://apps.wv.gov/OIS/OffenderSearch/RJA/Offender/Search (last accessed May 3, 2018). Plaintiff filed an amended complaint alleging that Defendant Steve Adkins, a WRJ correctional officer, allowed another inmate to assault Plaintiff on November 4, 2016. (ECF No. 5 at 1). Plaintiff contends that he was housed in the protective custody unit, which allowed only one inmate out of a cell at any given time. (ECF No. 5 at 1, ECF No. 45 at 1). According to Plaintiff, he was released from his cell that morning for a shower and a phone call; however, another inmate had placed a toothpaste cap to prevent that inmate's cell door from locking ("had capped his door") and the inmate allegedly emerged from his cell and attacked Plaintiff. (*Id.*). Plaintiff argues that the fact that the door was "capped" should have been visible to Defendant, who was working in the guard tower at the time of the assault. Plaintiff asserts that other guards told him that it was "plain as day" when a door was capped and there was electronic equipment that displayed a green light when the door was secure and a red light when it was unsecured. (*Id;* ECF No. 2 at 4.). In any event, Plaintiff claims that Defendant should have checked to make sure that the other inmate's door was locked before allowing Plaintiff to come out of his cell. (*Id.*).

Defendant moves for summary judgment on Plaintiff's amended complaint. (ECF Nos. 42, 43). Defendant argues that Plaintiff has not pursued, much less exhausted, his available administrative remedies, which is required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (*Id.*). Defendant cites to Plaintiff's deposition testimony in which Plaintiff stated that he did not file any administrative grievances regarding his claim that Defendant should have conducted proper surveillance to prevent Plaintiff from being assaulted. (ECF No. 43 at 2-3).

## II. <u>Standard of Review</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when no genuine issue of material fact is in dispute, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and a disputed issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, Id.* at 248. Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court shall "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 520 (1991). Consequently, motions for summary judgment impose a heavy burden on the moving party as it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *See Miller v. F.D.I.C.*, 906 F.2d 972, 974 (4th Cir. 1990).

Nonetheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 252. While any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477

3

U.S. at 249-50).

The court is required to liberally construe *pro se* complaints, such as the one filed by Plaintiff in this case. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Analysis

The PLRA requires prisoners to exhaust administrative remedies prior to filing a complaint in federal court.[2] 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably

---

[2] As noted, Plaintiff is a state prisoner. Therefore, he was also required to exhaust his administrative remedies in accordance with the West Virginia Prisoner Litigation Reform Act, W. Va. Code § 25-1A-1, *et seq.*, prior to filing this federal lawsuit. However, the federal PLRA exhaustion requirement governs this action and Plaintiff must have exhausted his administrative remedies under the PLRA unless they were unavailable to him. *Freeland v. Ballard*, No. 2:14-CV-29445, 2017 WL 337997, at *3 (S.D.W. Va. Jan. 23, 2017) (collecting cases).

4

money damages, exhaustion is a prerequisite to suit.") (citations and internal quotation marks omitted). Recently, in *Ross v. Blake*, the Supreme Court of the United States ("Supreme Court") considered a case in which a Maryland state inmate filed a § 1983 complaint alleging that a correctional officer used excessive force against him and that another officer failed to take action to protect him. *Ross*, 136 S. Ct. 1850, 1855 (2016). One of the officers raised the PLRA's exhaustion requirement as an affirmative defense, stating that the inmate brought suit without first following the prison's prescribed procedures for obtaining an administrative remedy. *Id.* The district court dismissed the lawsuit for lack of exhaustion, but the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") reversed the decision, stating that the PLRA's exhaustion requirement was "not absolute" and special circumstances could excuse exhaustion, such as when a prisoner reasonably, but mistakenly, believed that he had sufficiently exhausted his administrative remedies. *Id.* at 1856.

Upon review, the Supreme Court explicitly rejected the Fourth Circuit's "special circumstances" exception, noting the exhaustion requirement in the PLRA is statutorily mandated and not amenable to judicially created exceptions. *Id.* The Supreme Court explained that the mandatory language of the PLRA meant that a court may not excuse a failure to exhaust, even to take special circumstances into account. *Id.* Nonetheless, the Supreme Court pointed out in *Ross* that the PLRA does contain one explicit exception to the exhaustion requirement: an inmate need not exhaust "unavailable" remedies. *Id.* at 1858. The Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with

5

officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* Second, an administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* Finally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 1860. "[S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.*

For West Virginia state inmates, exhaustion of administrative remedies for claims involving, *inter alia*, food quality, health care, prison discipline, violence, sexual assault, or sexual abuse against an inmate all require a final decision from "the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee." W. Va. Code §§ 25-1A-2, 25-1A-2a. In this case, Plaintiff is a WVDOC prisoner, but is housed at the WRJ, which is operated by the West Virginia Regional Jail and Correctional Facility Authority (the "Jail Authority"). The administrative remedy procedure of an inmate's place of confinement governs the exhaustion process. *White v. Haines*, 618 S.E.2d 423, 431 (W. Va. 2005) ("[B]efore an inmate may bring a civil action challenging the conditions of his/her confinement, he/she must first exhaust the administrative remedies provided by the correctional facility *in which he/she is housed*.") (emphasis added). Therefore, whether Plaintiff has exhausted his administrative remedies is determined by examining the Jail Authority's grievance process.

W. Va. Code St. R. § 94-5-2 provides that the Handbook of Inmate Rules and Procedures published in June 1994 "serves as the basis for internal discipline in the regional jails." In addition, W. Va. Code St. R. § 95-1-15.11 requires the "jail facility" to

6

have "a written grievance procedure which is explained and available to inmates and staff." Defendant has produced a verified copy of the West Virginia Regional Jail Authority Inmate Handbook (the "Handbook"), which he contends provided the administrative remedy procedure that Plaintiff was obligated to follow with respect to the claims raised in this action. (ECF No. 47-1); *see* (ECF No. 46 at 2) (ordering Defendant to file the handbook or written rules that Plaintiff was obligated to follow to exhaust his administrative remedies while he was housed at the WRJ.).

The Handbook provides that each inmate is issued a copy of the Handbook and the inmate is required to read and maintain the Handbook in good condition and abide by its rules and regulations. (ECF No. 47-1 at 2, 5). The Handbook enumerates two ways in which inmates can seek "to resolve most problems they may experience during their incarceration;" the inmate can (1) make "make routine requests" or (2) "file more formalized grievances about jail procedures." (*Id.* at 23). To make routine requests, the inmate should complete one of "the forms available in each housing unit" and then hand the request form "directly to the pod officer," who forwards it to the shift supervisor. (*Id.*). The shift supervisor either responds to the request or forwards the request to the appropriate party; according to the Handbook, "[d]uring normal conditions, most requests will receive a response within twenty-four hours." (*Id.*).

An inmate may instead file a grievance if the inmate believes that he or she has a "serious complaint or a significant problem." (*Id.* at 24). To file a grievance, the inmate must complete the prescribed inmate grievance form provided by jail personnel and jail personnel must then transmit the unaltered form to the Administrator's office no later than the end of the shift. (*Id.*). The Administrator can reject the grievance or allow the inmate an opportunity to be heard. (*Id.*). The Administrator may assign a staff member

7

to investigate the complaint and report written findings "within forty-eight hours and shall inform the inmate of such action." (*Id.*). If an investigation occurs, the Administrator must provide a written decision to the inmate within twenty-four hours of receiving the investigation report. (*Id.*). An inmate who is dissatisfied with the Administrator's decision can pursue two levels of appeal: First, the inmate can appeal an unfavorable decision to the Chief of Operations and then to the Executive Director of the Regional Jail Authority. (*Id.* at 24-25). The Handbook provides "special procedures" for inmates who are threatened or assaulted. (*Id.* at 25). "If an inmate is threatened or assaulted, the incident should be reported to the staff member at the earliest possible time;" the "report may be made orally or in writing." (*Id.*). If verified, the inmate has the right to be separated from the offender and the offender will be subjected to discipline or prosecution. (*Id.*).

  On the issue of exhaustion, Plaintiff's initial complaint stated that he "informed the Jail's staff that [he] was being threatened," but his "inquiries were never answered and Staff said [that he] was fine [where he] was." (ECF No. 2 at 3). Defendant's counsel followed up on this issue in Plaintiff's deposition on November 10, 2017. Plaintiff again referenced "inquiries" that he made, which stated that he was being threatened by other inmates. (ECF No. 42-1 at 23, 54). Plaintiff testified that his inquiries were never answered and he did not "know the difference between a grievance and an inquiry," but he submitted inquires because they were always answered faster than his grievances. (*Id.* at 43, 44, 55). However, Plaintiff conceded that he had filed several grievances on other issues in the past and he knew that there were "certain items you need to file a grievance for." (*Id.* at 53). Regardless, Plaintiff confirmed that he never filed a grievance regarding the alleged assault that occurred on November 4, 2016 or Defendant's alleged

8

"failure to watch the doors the way he should have," which is the subject of the amended complaint. (*Id.* at 24-25, 55-56). Plaintiff stated that he "didn't know that [he] had to" file a grievance regarding Defendant because he quickly reported to "Corporal Ball" that the inmate had "capped his door" and Corporal Ball responded, "I told them to check those doors – to start checking those doors." (*Id.* at 25).

When faced with Defendant's motion for summary judgment for lack of exhaustion, Plaintiff merely restated his claims against Defendant. (ECF No. 45). However, Plaintiff did not respond to, dispute, or even address, the exhaustion issue. Plaintiff did not adduce any argument or facts demonstrating that he exhausted his administrative remedies or that the administrative remedy process was unavailable to him. (*Id.*). As noted, Plaintiff testified in his deposition that he filed various inquiries regarding being threatened or assaulted by the other inmate and he did so primarily because he received a response to inquiries more quickly whereas a response to a grievance could take a month. It appears that Plaintiff refers to the "routine request" procedure when he states that he filed inquiries regarding various issues. While Plaintiff undoubtedly received responses to his routine requests more quickly than any formal grievances that he filed, the undersigned does not find any law to stand for the proposition that the fact that a response to a grievance can take a month rendered the administrative remedy process unavailable to Plaintiff. Administrative remedies need not "meet federal standards, nor must they be plain, speedy, and effective." *Porter,* 534 U.S. at 524. Moreover, a slightly longer grievance time-frame of a month as opposed to 24 hours or less, as is often the case with an inquiry, could certainly be considered reasonable given the additional investigation and procedures involved in considering a formal grievance.

9

In any event, critical scrutiny of the WRJ routine request and grievance procedures is unnecessary in this case because Plaintiff evidently did not follow *either procedure* with respect the claims asserted in this action. Plaintiff stated that he did not know that he "had to" do so. (ECF No. 42-1 at 25). Plaintiff filed some inquires related to being threatened and assaulted by another inmate, but there is no evidence that Plaintiff filed any routine requests or grievances regarding Defendant. This lawsuit is filed against Defendant, not the inmate that allegedly assaulted Plaintiff; specifically, Plaintiff contends that Defendant failed to protect him or prevent him from being assaulted by the other inmate. Plaintiff did not raise any such issue through the inmate grievance procedure and, as stated, the PLRA precludes this Court from considering Plaintiff's claims until he raises such issue in the available grievance procedure and receives a final decision from the Executive Director of the Regional Jail Authority or the Director's designee. Plaintiff has very clearly not attempted to avail himself, much less exhausted, the available grievance procedures as to his claims against Defendant. Plaintiff's declaration that he did not know that he had to file a grievance regarding his complaints about Defendant is unconvincing. The Handbook is clear regarding the procedures that WRJ inmates must follow to raise complaints that they have during their incarceration and Plaintiff utilized such procedures with regard to many other issues. Furthermore, to the extent that Plaintiff was previously unaware, he is hereby advised that he must utilize the grievance procedure and allow state authorities the opportunity to remedy his allegations against Defendant before seeking relief in this Court.

Accordingly, the undersigned **FINDS** that Plaintiff failed to exhaust available administrative remedies as required by the PLRA and **RECOMMENDS** that the

amended complaint be dismissed without prejudice for lack of exhaustion. *See, e.g., Freeland*, 2017 WL 337997, at *7 (dismissing an inmate's unexhausted claims under § 1983 without prejudice); *Purnell v. Landerkin*, No. CV CCB-17-2420, 2018 WL 1322115, at *3 (D. Md. Mar. 13, 2018) (granting summary judgment because the § 1983 plaintiff had not exhausted available administrative remedies and dismissing the complaint without prejudice); *Artis v. Williams*, No. 5:15-CT-3070-BO, 2016 WL 9080936, at *2 (E.D.N.C. Nov. 22, 2016), *aff'd*, 684 F. App'x 292 (4th Cir. 2017), *reh'g denied* (Apr. 25, 2017) (granting summary judgment and dismissing case without prejudice for failure to exhaust); *Faison v. Mathena*, No. 7:14CV00426, 2015 WL 4431106, at *2 (W.D. Va. July 20, 2015) (granting the defendants' motion for summary judgment under § 1997e(a) for failure to exhaust available administrative remedies before bringing the lawsuit and dismissing the claims without prejudice); *Cox v. McCargo*, No. 5:16-CT-3066-D, 2017 WL 4581795, at *3 (E.D.N.C. Oct. 13, 2017) (granting motion for summary judgment, in part, and dismissing the action without prejudice for failure to exhaust administrative remedies).

### IV. Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Plaintiff's amended complaint, (ECF No. 5), be **DISMISSED**, without prejudice, and this action be removed from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure,

Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff.

**FILED:** May 4, 2018

_____
Cheryl A. Eifert
United States Magistrate Judge